RAFAEL PICÓ ET AL., Petitioners, *v.* DISTRICT COURT OF SAN JUAN, Respondent; J. VALLDEJULI RODRÍGUEZ, Intervener.

No. 36.    Argued March 4, 1946.—Decided March 29, 1946.

*Ciro Malatrasi, Jr., Rafael R. Fuertes,* and *Rafael Rodríguez Lebrón* for petitioners. *Brown, Newsom,* and *Córdova,* for intervener, plaintiff in the main action.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

Petitioners herein, members of the Puerto Rico Planning, Urbanizing and Zoning Board, seek the annulment of an order issued by the respondent judge in Civil case No. R–7155, Juan Valldejuli Rodríguez *v.* Puerto Rico Planning Board, on the nullity of actions, fixing of bond, and other particulars, by virtue of which a bond was fixed for $25,000 in favor of the People of Puerto Rico to guarantee the completion of a certain subdivision which is being carried out by the plaintiff, and authorizing plaintiff to sell and record lots 1 to 366 of the Record Plan, ordering the Registrar of Property of San Juan to record said plan, except open spaces not urbanized which may not be sold or recorded. The facts, briefly outlined, are as follows:

On November 21, 1945, Juan Valldejuli Rodríguez filed a complaint in the District Court of San Juan against the Puerto Rico Planning, Urbanizing and Zoning Board, which is hereinafter referred to as the Board, wherein he alleged to be the owner of a property of 75 acres (*cuerdas*) located in Río Piedras, that he submitted a design to the Board for subdivision purposes which the latter amended; that plaintiff prepared new construction plans which were approved by the Board on August 24, 1945, authorizing the commencement of the works as soon as plaintiff should obtain the approval of the

Puerto Rico Acqueduct and Sewer Service of the Department of Health, and of the Water Resources Authority and that these insular agencies approved said plans; that plaintiff obtained a loan in order to begin the site improvements and entered into a contract for $241,467.36 with an engineering firm, and that the works began on September 20, 1945, to be completed within the period of 240 days; that due to the size of the work plaintiff was compelled to sell lots and with the proceeds thereof meet his obligations; that he applied to the Board for the approval of a record plan and the fixing of a bond to guarantee the completion of the work pursuant to the construction plan previously approved by the Board; that the Board held a hearing on October 22, 1945, and on November 2 rendered a decision whereby it provided (a) that plaintiff had to furnish a bond for $261,467.36, that is, about $20,000 more than the amount of the contract agreed with the engineering firm, (b) that he had to convey and assign gratuitously to the People of Puerto Rico 37,372.29 square meters of land consisting of open spaces, notwithstanding the fact that the People of Puerto Rico had already taken more than twelve acres of land, that is about 48,000 square meters for public highways, such as the Río Piedras–La Muda detour and overlooking the fact that more than 25 per cent of the remaining land had been dedicated to streets; (c) that the plaintiff had to settle certain controversies with determinate owners of lots which had been sold, which problems are not incumbent on the Board and over which it has no jurisdiction; that said decision is null and void (1) because the bond required is excessive, unjust and unreasonable; (2) because the three conditions are extraneous to the only matter submitted to the Board, that is, the furnishing of a bond, and (3) because it tends to deprive plaintiff of his property for public use without due compensation. Plaintiff asked the court to fix a reasonable bond, and to decree the nullity of Article 37 of the Board Regulations in so far as it fixes a minimum percentage for the reservation and dedication of urbanized areas

for public use, and authorizes the Board to fix the maximum desired, thereby depriving the citizen of his property without due compensation, by decreeing the nullity of the decision of November 2, 1945, rendered by the Board.

Together with the complaint plaintiff filed a motion praying the court to fix a provisional performance bond and authorizing the entry of the record plan in the Registry of Property of San Juan in order to be able to sell lots for urbanization purposes.

On November 28, 1945, the lower court issued the order mentioned in the first paragraph of this opinion and two months later, that is, on January 28, 1945, petitioners filed a petition in this court, pursuant to Act No. 32 of 1943 (Laws of 1943, p. 84), alleging that the order issued was void (1) because the lower court lacked jurisdiction to render it under the third paragraph of § 26 of Act No. 213 of 1942 (Laws of 1942, p. 1106), as amended by Act No. 155 of 1943.(Laws of 1943, p. 488); (2) because it lacked jurisdiction to render said order ex parte under Rule 15 of the Rules of Civil Procedure; (3) that even if it should have jurisdiction it acted improperly or committed an abuse of discretion in rendering the same without giving the Board an opportunity to be heard, and (4) that neither the complaint nor the motion state facts to constitute a cause of action warranting the issuance of the order by the court, which operates as a mandatory injunction directed against the registrar of property.

We issued the writ sought and stayed the effects of the order appealed from during the prosecution of this appeal. We heard the parties on March 4 and granted them an additional term to file briefs, which they did.

The intervener, plaintiff in the lower court, contends that we should annul the writ issued (1) because the Board did not move the court for a reconsideration of its order and has given it no opportunity to consider and determine the contentions now brought before this court, and cites the cases of *Madera* v. *Campillo,* 30 P.R.R. 156; *National City Bank* v.

*District Court,* 45 P.R.R. 752; and *Las Monjas Corp.* v. *District Court,* 40 P.R.R. 282; (2) because the lower court had jurisdiction to take cognizance of the main action and to issue the order appealed from and (3) because having jurisdiction it did not abuse its discretion in rendering said order.

We shall first consider the jurisdictional question.

■ The Board maintains that, pursuant to the last paragraph of § 26 of Act No. 213 of 1942, as amended, the only court in Puerto Rico that has jurisdiction to review a decision of the Board is this Supreme Court. The third paragraph of said Section provides:

"Any party 'interested in the approval, refusal to approve, or disapproval of a subdivision plat, or in the issuance or refusal of a building, sanitary or building—or land—use permit, against which a petition for review has been filed and a decision rendered thereon, by the Puerto Rico Planning, Urbanizing and Zoning Board or by the Puerto Rico Planning, Urbanizing and Zonning Board of Appeals, as the case may be, may present within the term of fifteen (15) days after notification thereof, certified copies of any such decision or actions for its review before the Supreme Court of Puerto Rico; *Provided,* That said review before the Supreme Court may be granted only on questions of law."

The Board argues that the lower court "actually reviewed the action of the Board by providing in its order of November 28, 1945, for a bond in an amount less than that fixed by the Board as well as by ordering the recordation of the plan and authorizing the sale and recordation of the lots, all of which the respondent Board had denied and conditioned to the fulfillment of certain requirements."

On the other hand, the intervener contends that in said decision the Board did not approve or disapprove the subdivision plat inasmuch as the Board had already approved said plan in its decision of August 4, 1945, when it approved the construction plans, which constitutes, under Article 43 of the Board Regulations, "an official acceptance of the design as in agreement with these Regulations"; that the Board had

before it a motion to fix a bond guaranteeing the completion of the site improvements for the purpose of approving the record plans and permitting the sale of lots, and that in the decision of said motion the Board imposed as a condition that the plaintiff had to convey gratuitously to the People of Puerto Rico open spaces of the subdivision area, which condition was not contained in the decision approving the Subdivision Plats; he finally alleges that the third paragraph of § 26, *supra*, "does not clearly allow the review before the Supreme Court of a decision rendered by the Board under Article 9 of the Regulations providing for the performance bond in connection with the design of a subdivision previously approved by the Board."

Article 9 of the Board Regulations provides:

"The Record Plans shall not be approved until all the grading, streets, utilities, and construction of other site improvements have been completed, or until the subdividor submits a satisfactory performance bond guaranteeing the completion of such site improvements within the period determined by the Board. No building shall be erected, no land shall be sold or leased and no land use or building permits shall be issued, until the Record Plans have been approved and recorded. Performance bonds shall be in the form prescribed by the Attorney General of Puerto Rico and satisfactory to the Treasurer of Puerto Rico."

And Article 43 and 48 of the same Regulations define the terms Construction and Record Plans, respectively, thus:

"ARTICLE 43.—*Definition*.—Construction Plans are herein defined as a set of maps, drawings and documents through which the subdivider's plan is presented to the Board for approval. This approval constitutes an official acceptance of the design as in agreement with these Regulations. Once approved, the Construction Plans shall serve as a basis for the preparation of the Record Plans.

"The drawings included in the Construction Plans may be made in pencil, provided legible prints may be obtained."

"ARTICLE 48.—*Definition*.—The Record Plans are herein defined as a set of maps, drawings, and documents through which the subdivider's plan is presented for recording and filing. They must

correspond in all their parts with the Construction Plans and with the construction they represent. The Record Plans shall be submitted to the Board, and upon final approval by the Board the subdividor shall record and file the same with the Registry of Subdivision Plats.

"The drawings included in the Record Plans shall be clearly and legibly drawn in black ink on tracing cloth."

It follows, therefore, that although the Record Plans must "correspond in all its parts" to the Construction Plans before the Board may approve the Record Plans, the subdivider must have completed the grading, streets, utilities, and construction of other site improvements or furnished a performance bond guaranteeing the completion of such site improvements within the period determined by the Board, according to Article 9 of the Regulations, *supra,* which further provides that no land shall be sold or leased until the Record Plans have been approved and recorded.

This provision of Article 9 of the Regulations is in conformity with § 24 of the Act, but it is this latter Section which reveals that it was not the legislative intent to give a final character to the construction plans [1] until the Board should have approved the subdivision plat and authorized its recordations in the corresponding registry. Section 24, insofar as pertinent, provides:

"Subdivisions.—From and after the effective date of applicable subdivision regulations provided for under Section 10 hereof, no subdivision of land within Puerto Rico shall be made, and no plat of a subdivision of land in urban areas or for urbanizations shall be received for recording, no buildings shall be erected, no land sold or leased, and no permit issued, except, and to the extent, that the same shall comply with said regulations and shall have been finally approved according thereto by the Board; *Provided, however,* That the Board may, in its discretion approve the sale or lease of land in subdivisions, subsequent only to the preliminary

---

[1] When intervener's construction plan was approved on August 24, 1945, by the Board, it was expressly stated that "the approval of this Construction Plan does not authorize the segregation or conveyance of any lot from this parcel of land."

approval thereof by the Board, for which the Board is hereby authorized. . . .''

■■■■ Under the attendant circumstances in this case, we believe that the question to be decided is not whether after the approval of the Construction Plan and while the approval of the Record Plan fixing the proper bond was pending, the Board could have fixed the amount of said bond and at the same time impose other conditions not contained in the approval of the Construction Plan,[2] but the question to be determined is whether by so acting, said decision or action of the Board was one of those enumerated in § 26, *supra,* for the review of which application should be made to this court and not to the lower court.

Upon carefully examining said § 26 we notice that, as admitted by the intervener, its language is quite confusing. Nevertheless, it is our opinion that the limited and strict construction applied by him in the sense that the decision of the Board, rendered on November 2, 1945, fixing the amount of the bond and imposing other conditions for the final approval of the record plan as a prerequisite for the sale of the intervener's lots, is not included within the decisions or actions of the Board mentioned in the aforesaid § 26, should not prevail. The decision of the Board had the effect of refusing the final approval of intervener's subdivision plat required by § 24 of the Act. Without this approval the intervener could not record said plan or sell the lots. Whether the bond required was excessive as well as whether the new conditions imposed on the intervener were legal, constitutes one of the ''decisions or actions'' of the Board in relation to the final approval of the subdivision or urbanization for which the intervener, as an interested party, had applied, referred to in the last paragraph of § 26, *supra.* The fact that this Section does not expressly mention that the fixing by the

---

[2] Pursuant to Article 6 of the Regulations the approval of these Construction Plans by the Board ''is to be considered only as an acceptance *of the design* insofar as it conforms to these Regulations.''

Board of the bond authorized under Article 9 of the Regulations is one of the "decisions or actions" reviewable by this court alone, does not mean that it is not included within said decisions or actions if such a procedure for the bond is a prerequisite for the final approval of the subdivision plat, and its record in the registry, a prerequisite for the sale of the subdivision lots.

We are of the opinion that it was not the legislative intent to provide for two legal proceedings to review the decisions or actions of the Board, to wit, one before this court and another before the district court. On the contrary, a reasonable construction of the statute shows, in our opinion, that the intention of the legislator was to limit judicial proceedings to one court alone, the Supreme Court, and even in said cases to limit the scope of the review to questions of law.

For the reasons stated the order appealed from must be annulled for lack of jurisdiction of the lower court to render it.

Mr. Justice Córdova did not participate herein.